808 BK LLLC
Lars Peterson
745 Fort St #801
Honolulu, HI 96813
808.589.1010
Lars@808bk.com

Lewis W. Siegel
60 East 42nd Street - Suite 4600
New York, NY 10165
(212) 286-0010
LWS@LWSEsq.com

Co-Counsel for Hawaii Brewery Development Co., Inc., Debtor and Debtor in Possession

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| **In re**<br><br>**Hawaii Brewery Development Co., Inc.**<br><br>**Debtor and Debtor-in-Possession** | **Bk. No. 26-00311**<br>**(Chapter 11 - Subchapter V)**<br><br>**Hearing:**<br>**Date: September 22, 2026**<br>**Time: 2:00 p.m.**<br>**Judge: Hon. Robert J. Faris**<br><br>**Related Docket Nos. 106, 139, 142, 143** |

**Confirmation Brief in Support of**
**Debtor's Plan of Reorganization Dated August 7, 2026**

## Table of Contents


**Preliminary Statement** . . . . . . . . . . 1

**Background** . . . . . . . . . . 2

**A. Debtor's Business and Chapter 11 Filing** . . . . . . . . . . 2

**B. Plan, Balloting.** . . . . . . . . . . 5

**Confirmation Objections and Debtor's Reply** . . . . . . . . . . 6

**A. The Receiver's Objection Misstates What the Plan Says About Payment of Claims.** . . . . . . . . . . 6

**B. Leonite's Objections Are Not a Basis to Deny Confirmation of the Plan** . . . . 7

(1) The Plan was Proposed in Good Faith . . . . . . . . . . 7

(2) There was No Concealment of, or Failure to Pursue, Claims Against Insiders. . . . . . . . . . . 8

(3) There are No Material Misrepresentations . . . . . . . . . . 9

(4) There is Clear Evidence that the Plan is Feasible . . . . . . . . . . 10

(5) Interest is Being Paid on All Unsecured Claims. . . . . . . . . . . 11

(6) Disclosure of Insider Information . . . . . . . . . . 12

(7) The Plan's Remedy for Defaults is Clear and Appropriate. . . . . . 12

**C. The Tax Department's Statement is not a reason to Deny Confirmation** . . . 13

**Summary of Plan and Treatment of Claims**. . . . . . . . . . 14

**Confirmation Requirements Are Satisfied** . . . . . . . . . . 14

**A. The Plan Classification System Satisfies Sections 1122 and 1123(a)(1)-(4)** . . . . . . . . . . 14

**B. The Plan Provides Adequate Means for Implementation.** . . . . . . . . . . 15

**C. Section 1123(a)(6) Does Not Apply** . . . . . . . . . . 15

**D. The Terms of the Plan are Consistent with Interests of Creditors & Equity** . . . . . . . . . . 16

**E. Section 1123(a)(8) Does Not Apply.** . . . . . . . . . . 16

**F. Proponent Has Complied with Applicable Provisions of Bankruptcy Code** . . . . . . . . . . 16

**G. The Plan Was Proposed in Good Faith.** . . . . . . . . . . 17

**H. The Plan Complies With Section 1129(a)(4).** . . . . . . . . . . 17

**I. Disclosures Required Under Section 1129(a)(5).** . . . . . . . . . . 18

**J. No Governmental Rate Approval is Necessary.** . . . . . . . . . . 19

**K. The Plan Satisfies Section 1129(a)(7) and (8)** . . . . . . . . . . 19

**L. Priority Claims are Treated Appropriately.** . . . . . . . . . . 20

**M. The Plan is Feasible.** . . . . . . . . . . 20

**N.** **Payment of Fees** . . . . . . . . . . 22
**O.** **Section 1129(a)(13), (14), (15), and (16) are Inapplicable** . . . . . . . . . . 23
**P.** **The Plan should be confirmed under Section 1191(a)** . . . . . . . . . . 23

**Conclusion** . . . . . . . . . . 24

## Table of Authorities

**Cases**

*Ad Hoc Comm. of Holders of Trade Claims v. PG&E (In re PG&E Corp.)*, 46 F.4th 1047 (9th Cir. 2022) . . . . . . . . . . 20

*In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir. 1986). . . . . . . . . . 10, 20

*In re Boulders on the River, Inc.*, 164 B.R. 99 (B.A.P. 9th Cir. 1994) . . . . . . . . . . 17

*In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985) . . . . . . . . . . 22

*In re Sagewood Manor Associates Limited Partnership*, 223 B.R. 756 (Bankr. D. Nev. 1998) . . . . . . . . . . 20

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) . . . . . . . . . . 16

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070 (9th Cir. 2002) . . . . . . . . . . 17

*Sherman v. Harbin (In re Harbin)*, 486 F.3d 510 (9th Cir. 2007) . . . . . . . . . . 22

*Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323 (9th Cir. 1994) . . . . . . . . . . 11, 22

**Statutes**

11 U.S.C. § 1122. . . . . . . . . . 14, 18

11 U.S.C. § 1123. . . . . . . . . . 18

11 U.S.C. § 1123(a)(1) . . . . . . . . . . 15

11 U.S.C. § 1123(a)(2) . . . . . . . . . . 15

11 U.S.C. § 1123(a)(3) . . . . . . . . . . 15

11 U.S.C. § 1123(a)(4) . . . . . . . . . . 15

11 U.S.C. § 1123(a)(5) . . . . . . . . . . 15



U.S. Bankruptcy Court - Hawaii #26-00311 Dkt # 151 Filed 09/15/26 Page 4 of 30

11 U.S.C. § 1123(a)(6) . . . . . 15

11 U.S.C. § 1123(a)(7) . . . . . 16

11 U.S.C. § 1123(a)(8) . . . . . 16

11 U.S.C. § 1126(f). . . . . . 1, 6, 14, 19

11 U.S.C. § 1127(a) . . . . . 18

11 U.S.C. § 1129(a) . . . . . 23

11 U.S.C. § 1129(a)(2) . . . . . 16

11 U.S.C. § 1129(a)(3) . . . . . 17

11 U.S.C. § 1129(a)(4) . . . . . 17

11 U.S.C. § 1129(a)(5) . . . . . 18

11 U.S.C. § 1129(a)(6) . . . . . 19

11 U.S.C. § 1129(a)(7) . . . . . 19, 20

11 U.S.C. § 1129(a)(8) . . . . . 19, 20

11 U.S.C. § 1129(a)(9) . . . . . 20

11 U.S.C. § 1129(a)(11) . . . . . 20

11 U.S.C. § 1129(a)(12) . . . . . 22

11 U.S.C. § 1129(a)(13) . . . . . 23

11 U.S.C. § 1129(a)(14) . . . . . 23

11 U.S.C. § 1129(a)(15) . . . . . 23

11 U.S.C. § 1129(a)(16) . . . . . 23

11 U.S.C. § 1191(a) . . . . . 23, 24

11 U.S.C. § 502(a) . . . . . 7

28 U.S.C. § 1930 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Federal Rules**

Fed. R. Bankr. P. 3019(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Confirmation Brief in Support of**
**Debtor's Plan of Reorganization Dated August 7, 2026**

Hawaii Brewery Development Co., Inc., debtor and debtor in possession ("Debtor" or "HBDC"), through its undersigned counsel, hereby submits this Confirmation Brief in support of confirmation of Debtor's Plan of Reorganization Dated August 7, 2026 (the "Plan").[1]

In support of confirmation of the Plan, Debtor respectfully represents:

## Preliminary Statement

Contemporaneously with this Confirmation Brief, Debtor is filing:

- A declaration (the "Ballot Declaration") as to the ballots cast to Accept or Reject the Plan. The Ballot Declaration notes that as the Plan provides for all creditors to be paid the full amount of their Allowed Claim plus interest, all classes and holders of claims are unimpaired. As a result, under 11 U.S.C. §1126(f)[2] all classes and holders of claims are conclusively presumed to have accepted the Plan. Accordingly ballots to reject the Plan are moot.
- A declaration (the "Value Declaration") by Amy Bender as to financial status and capability of Debtor
- A declaration (the "Bender Consulting Declaration") by Marcus Bender confirming that if necessary to fund any payments under the Plan, Bender Consulting Ltd. will provide Debtor with up to $1,000,000.

The Plan should be confirmed as Debtor meets all the requirements for confirmation

---

[1] Capitalized terms not herein defined shall have the meaning set forth in the Plan.

[2] Unless otherwise stated, references below to "Section" or "§" are references to sections of the United States Bankruptcy Code - Title 11 U.S.C.

under the Bankruptcy Code and:

- it provides for all Allowed Claims to be paid in full with interest;

- Debtor has sufficient cash in its bank account to pay all liquidated filed claims;

- Debtor's insurer is paying for the defense of the unliquidated claim of Leonite and Debtor's insurance coverage of $6,000,000 should be more than enough to cover any judgment if any of that claim is found valid;

- if for any reason, insurance does not cover any obligation to Leonite, Debtor has over $3,000,000 of real estate which can be sold or borrowed against to provide funding; and

- if those assets are not enough, Bender Consulting, Ltd. will provide up to $1,000,000 of additional funds.

## Background

### A. Debtor's Business and Chapter 11 Filing

On April 16, 2026 (the "Petition Date"), Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii.

Debtor filed its Chapter 11 in order to avoid a disruption of its business and dismemberment of its assets. While Debtor's assets are, and at all relevant times have been, substantially in excess of its liabilities, at the Petition Date, it did not have liquid assets to pay the obligations arising from an adverse order in the Hawaii Circuit Court Case.

At the Petition Date, Debtor owned 3 parcels of property in Kea'au, Hawaii:

(a) a parcel of about 7 acres (the "Property") with an artesian water well which

was the subject of a lease (the "Lease") for the Property to Hawaiian Springs LLC ("HSW"). The Property was appraised in 2025 by Bank of Hawaii ("BOH") for approximately $2,000,000. That valuation was with the Lease in effect; (See Value Declaration ¶4).

(b) a parcel of about 1.14 acres (the "Solar Lot"). HBDC invested over $1,000,000 in solar power generating equipment that was installed on this lot. The sale of the electricity from that solar equipment generates a stream of revenue to Debtor of approximately $2,250 - $8,250 per month pursuant to an agreement under which HBDC provides power to the Property. The Solar Lot was appraised for approximately $1,000,000 in 2024; (See Value Declaration ¶4).

(c) a parcel of about 5 acres (the "KAL Lot"). This lot was sold to KAL in 2022 under an installment sale, but HBDC retained title to the lot until the note (the "KAL Note") was paid in full.

As of the Petition Date, Debtor had two secured creditors,

- the SBA was owed approximately $96,000. That claim was secured by a first security interest in the KAL Note

- Bank of Hawaii ("BOH") was owed approximately $735,000. That claim was secured by a mortgage on the Property and a second security interest in the KAL Note.

At the beginning of September 2026, KAL paid off the KAL promissory note to Debtor in consideration of Debtor transferring ownership of the KAL Lot to KAL. See ECF # 134 for the Order authorizing such transfer and payment. As part of the closing of that transaction, the secured debts of Debtor to Bank of Hawaii and the SBA were paid in full.

The net proceeds from the KAL Note to Debtor was approximately $1,120,000 after

payment of the expenses of sale and the balances due to BOH and the SBA were paid in full. (See Value Declaration ¶10). Those net proceeds are in excess of the approximately $900,000 of unsecured claims that were filed or deemed filed in this case.

Almost all of the unsecured claims in this case arose from the Hawaii Circuit Court Case. That case was commenced by Debtor in November 2023 to obtain a determination that the Lease had terminated as a result of defaults under the Lease by HSW. In the middle of the Hawaii Circuit Court Case, Leonite filed an action in Colorado District Court seeking the appointment of a receiver for HSW, claiming that it held a security interest in all of the assets of HSW, including the Lease. That Leonite claimed an interest in the Lease was a surprise to Debtor as the Lease strictly forbids any assignment or encumbrance of HSW's interest in the Lease without Debtor's consent and provides that any assignment or encumbrance without Debtor's consent is void and a breach of the Lease. The Colorado District Court appointed Robert Stevens (the "Receiver") as receiver for HSW in 2024, and the Receiver has been in charge of HSW's operations since then.

Approximately three months before the scheduled trial date of the Hawaii Circuit Court Case, HBDC's trial counsel, Lung Rose Voss & Wagnild ("LRVW") withdrew from the representation of HBDC. Prior to that withdrawal, LRVW demanded full payment of the outstanding balance of its bills despite having agreed to accept ongoing monthly payments, and despite HBDC having made monthly payments. HBDC's principal sought a continuance of the trial date in order to retain replacement counsel as the law firms it contacted to replace LRVW were not willing to be substituted in when a trial was so close at hand. The judge in the Hawaii Circuit Court Case denied the request -- refusing to grant even a single continuance -- and thereafter dismissed the action with prejudice as a sanction for failure to prosecute. The judge

then awarded HSW's counsel fees in an amount of approximately $243,000. The Receiver's proof of claim in this case is for those fees.

LRVW has filed a claim (Proof of Claim #3) in this case for approximately $453,000 (over $110,000 of that claim is for compounded interest) for what it asserts are the fees owed to it from representing Debtor in the Hawaii Circuit Court Case. Subsequent to LRVW's withdrawal, Debtor became aware of LRVW's malpractice in a number of its actions or inactions in the Hawaii Circuit Court Case, including, but not limited to, its failure to have amended the complaint and a failure to have conducted discovery.

Leonite filed a claim in the case but has never placed an amount on its claim. Leonite has also filed two adversary proceedings - one seeking a determination that its claim is not dischargeable, and a second seeking payment from Debtor and others on the grounds that the defendants interfered with its ability to collect on its debt from HSW. As noted below, Debtor believes the Adversary Proceedings are without any merit. The Adversary Proceedings are being defended by Debtor's insurer and Debtor has coverage for $1,000,000 under its liability policy and an additional $5,000,000 under its umbrella coverage.   (See Value Declaration ¶15).

Prior to the hearing on confirmation, Debtor will have filed objections to the claims of the Receiver, LRVW, and Leonite.

**B. Plan, Balloting.**

On August 7, 2026, Debtor filed its Chapter 11 Plan of Reorganization Dated August 7, 2026 (the "Plan"). [ECF # 106]. In July, Debtor had filed an earlier plan, but as a result of the impending sale of the KAL Lot and receipt of over $1,100,000 of the proceeds from the KAL

Note, it made sense to the Plan to advance the timing of payments to creditors.

On August 10, 2026, the Court entered an order in which, among other things, scheduled a hearing on confirmation of the Plan for September 22, 2026. [ECF #119]

On August 19, 2026, Plan packages, which enclosed Notice of the Confirmation Hearing, a copy of the Plan, and a copy of the Ballot for accepting or rejecting the Plan, were mailed to all creditors and parties in interest. See Certificate of Service filed on August 21, 2026 [ECF #125]

The balloting deadline in this case was September 8, 2026. As indicated in the Ballot Declaration, ballots were cast by four creditors in Class 5 under the Plan. No other creditors cast ballots. Two ballots cast were to accept the Plan and ballots by the Receiver and LRVW were cast to reject the Plan. As the Plan provides for all unsecured creditors to be paid the full amount of their Allowed Claims plus interest, the creditors in Class 4 and Class 5 are not impaired under the Bankruptcy Code. As Class 4 and 5 are unimpaired, pursuant to Section 1126(f), those Classes and the creditors are conclusively presumed to have accepted the Plan. Accordingly, the ballots cast to reject the Plan are moot.

## Confirmation Objections and Debtor's Reply

There have been three objections or statements as to confirmation of the Plan. An objection was filed by each of the Receiver [ECF #142] and Leonite [ECF #143]. A statement of position was filed by the Hawaii Department of Taxation [ECF # 139].

### A. The Receiver’s Objection Misstates What the Plan Says About Payment of Claims

The Receiver’s objection seems to argue that if a Debtor has the money available to pay

claims it should not have a right to object to claims that Debtor believes are incorrect. Receiver's statement that:

> "The Debtor cannot simultaneously maintain that it intends to object to 80% of the claims asserted by its unsecured creditors while also representing that it has sufficient funds to satisfy those claims in full."

makes no sense. The Plan provides that all Allowed Claims are to be paid in full with interest. The Plan's commitment to pay every Allowed Claim in full does not require the Debtor to concede the amount or validity of every asserted claim. A proof of claim is not automatically an Allowed Claim merely because it was filed. The Code expressly contemplates objections to claims. See Section 502(a)

There is nothing inconsistent, or in bad faith, in objecting to claims that Debtor believes are improper. As any Allowed Claim is payable with interest, the Receiver cannot claim any prejudice from an objection to a claim being filed. Accordingly, the Receiver's objection should be denied.

**B. Leonite's Objections Are Not a Basis to Deny Confirmation of the Plan**

The objections set forth by Leonite are either incorrect or immaterial. As such the objections should be denied.

(1) <u>The Plan was Proposed in Good Faith</u>

Leonite's assertion that the Plan was not proposed in good faith has no validity. The Plan provides for all creditors to be paid the full amount of their Allowed Claims plus interest. The issue of good faith in proposing a plan for the confirmation is set forth below (See page 17) at Section G of this Brief **Confirmation Requirements are Satisfied.**

Basically a plan is proposed in good faith if the results are consistent with the objectives and purposes of the Bankruptcy Code and the determination is based on the totality of the circumstances. As creditors in this case are being paid 100% of their Allowed Claims plus interest, the results are entirely consistent with, if not surpassing, the objectives and purposes of the Bankruptcy Code.

(2) <u>There was No Concealment of, or Failure to Pursue, Claims Against Insiders</u>

Leonite's assertion that there is a concealment or failure to pursue claims against insiders is wrong as a matter of law. The claim that Debtor made a fraudulent transfer of property to its sole shareholder in 2022 fails upon analysis of the objection.

As with other parts of its objection, Leonite fails to take into account that while Debtor had a cash flow crisis at the time it filed the case, Debtor is, and during all relevant periods always has been, solvent - meaning the fair value of its assets exceeded its liabilities. (See Value Declaration ¶6).

Under the Hawaiian Uniform Fraudulent Transfer Act, a fraudulent transfer or conveyance occurs when assets are transferred when a debtor is insolvent or is rendered insolvent by the transfer. See Haw. Rev. Stat. § 651C-5 which states:

> §651C-5 Transfers fraudulent as to present creditors. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation **and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.** (Emphasis added)

In 2022, at the time of the transfer that Leonite complains of, Debtor was not insolvent or rendered insolvent by the transfer. Debtor's assets far exceeded its liabilities at all relevant times. Virtually all of the asserted claims in this case arose from litigation that commenced in 2023. (Value Declaration ¶6).

Similarly, the assertions that Debtor was trying to conceal claims against Bender Consulting because it was not listed in the liquidation analysis attached to the Plan fails to consider what the liquidation analysis is intended to show - namely that creditors are not being paid less than they are entitled to. As the Plan provides for all creditors to be paid their Allowed Claims in full plus interest, and the liquidation analysis shows that all claims, even the disputed claims, could be paid in full on a liquidation, the omission of an asset from the liquidation analysis is not material to what the Plan is providing as payment to creditors. Further there was no concealment, as the receivable from Bender Consulting is shown in the Schedules.

Lest there be any concern of a shortfall in funds available to pay creditors, the principal of Bender Consulting is submitting a declaration confirming that if for any reason Debtor does not have funds available to pay any creditor, that Bender Consulting will provide up to $1,000,000 to Debtor, and will, if necessary sell or borrow against its assets to provide funds to Debtor.

(3) <u>There are No Material Misrepresentations</u>

Leonite's objection that Debtor made material misrepresentations fails, as the matters complained of, are neither material nor misrepresentations.

Debtor listed the Property and the Solar Lot in Schedule A of its Schedules at a value of $16,250,000. Though the parcels are separate tax lots and are used differently, they were listed

together in the Schedules as they had been listed for sale together at that price with a broker. (See Value Declaration ¶5). The value in the Schedules clearly noted that such value was based on the Lease not being in effect. Debtor believed, and throughout the course of this case, has asserted that the Lease was, or should have been, terminated, and is appealing the Hawaii Circuit Court Case decision on that issue.

The omission of the pending arbitration with its former litigation counsel, Lung Rose Voss & Wagnild ("LRVW¨) was an oversight but Debtor's dispute with LRVW was not concealed or material. The claim by LRVW and Debtor's counterclaim against LRVW were set forth in the Schedules.

Debtor responded and dealt with the issue raised by Leonite concerning whether or not Debtor is a Small Business Debtor in Debtor's objection to Leonite's motion to dismiss or convert the case. If the Court wishes further briefing on the issue, Debtor will provide a further response.

(4) There is Clear Evidence that the Plan is Feasible

Feasibility is discussed at Section M of this Brief - **Confirmation Requirements are Satisfied** (see page 20 below). For feasibility, the issue is whether there is a reasonable probability of success for the Plan. See *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986).

The total remaining filed claims in this case are less than $900,000 (which amount includes $700,000 of the disputed claims of the Receiver and LRVW which are being objected to). Debtor holds over $1,120,000 in its bank account. If for any reason those funds are insufficient, Debtor owns properties appraised at $2,000,000 and $1,000,000 which are free and

clear of liens which Debtor can sell or borrow against. And Bender Consulting has stated for this Court in the Bender Declaration that it will pay up to $1,000,000 to Debtor if such funds are necessary for payments under the Plan. (Bender Declaration ¶4). Where the value of a debtor's assets substantially exceed its liabilities, a plan of reorganization is feasible. See *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 326 (9th Cir. 1994).

(5) <u>Interest is Being Paid on All Unsecured Claims</u>

The Plan in a number of places (see Article 2(d), and Article 3 stating that all claims are unimpaired) states that all claims are being paid with interest. Leonite's objection that its claim is not being provided interest is incorrect.

First, the Court should be aware that Debtor does not believe that Leonite has any valid claim. The claim is embodied, without any asserted amount, in an adversary proceeding claiming that Debtor interfered with Leonite's ability to collect its debt from HSW. That claim has significant issues, including, but not limited to: (i) numerous of underlying factual claims are false, (ii) whether Leonite has a right to any of its asserted claim, as the actions complained of took place after the appointment of the Receiver, and any claim Leonite is asserting really belongs to the Receiver or HSW, and (iii) it is speculative at best that Leonite could have collected even a fraction of its debt from HSW under any circumstances, as it lent substantial sums to HSW even though: HSW had been through its own Chapter 11, HSW continued to lose money after the Chapter 11; and HSW had fallen substantially behind its financial obligations under the Lease, Leonite had virtually no collateral for the loan it made to HSW as it did not have any rights in the Lease which was the basis of HSW's business, and HSW's operations have



U.S. Bankruptcy Court - Hawaii #26-00311 Dkt # 151 Filed 09/15/26 Page 17 of 30

consistently lost almost $2,000,000 per year. (See Value Declaration ¶16).

Leonite assertion that the Plan does not provide for any interest on its claim is incorrect. The Plan states:

> "The Adversary Proceedings are being defended under an insurance policy of Debtor's and if anything is due to Leonite, it will be paid by the insurer. If for any reason the insurer does not pay any amounts due to Leonite, Debtor will pay Leonite from Debtor's funds"

The Plan provides for the claim to be paid what is due, that would include any interest that is due. However, if this Court believes that this language does not provide for interest, Debtor has no objection to the Confirmation Order providing clarification on the issue.

(6) Disclosure of Insider Information

The Plan mistakenly omitted to list the parties that will be directors and officers of Debtors and the salaries of such parties. The officers and directors will remain the same as listed in Debtor's Schedules, namely, Marcus Bender - President, Director and sole shareholder; Donna Bender - Director; and Amy Bender - Vice President. Marcus Bender will continue to be the sole paid employee with a salary of approximately $136,000 per year.

Debtor is willing to include the omitted information in any confirmation order or if the Court believes it appropriate, Debtor can file an amended Plan to cure the defects.

(7) The Plan's Remedy for Defaults is Clear and Appropriate

In the unlikely event that Debtor's objections to the claims of the Receiver, LRVW, and Leonite are not upheld AND there are insufficient funds on hand to pay any resulting Allowed

Claims, the Plan at Article 7(h), provides for a notice and reasonable period to cure any default. The Plan provides:

> **Default.** If there is a default under the Plan, any party complaining of the default shall give notice to Debtor in writing specifying the nature and details of the default. The notice shall be sent in the manner and to the addresses specified above. Debtor shall have 90 days after receipt of the notice to cure the default. If Debtor does not cure the default within such period, the complaining party may seek relief from the Bankruptcy Court. To provide funds to cure any default, Debtor may sell or mortgage any of its property.

The Plan does not purport to restrict any remedy otherwise available under the Bankruptcy Code. This provision sets forth a notice and cure procedure; and after the cure period has expired, the affected party may seek whatever relief is authorized by the Bankruptcy Code and applicable law. There is no prejudice to any creditor as any payment is due with interest.

For all of the reasons above, Leonite's objection should be denied.

**C. The Tax Department's Statement is not a reason to Deny Confirmation**

The Tax Department's statement indicated that Debtor has not filed its tax return for calendar year 2025 and it was concerned that any tax due be paid. Though the tax return for 2025 is not due until October 15, 2026, the return has recently been filed and a copy of the return has been delivered to the attorney for the Tax Department.

This Court can and should confirm the Plan for two reasons:

- First, as Debtor is a Subchapter S corporation, it is not obligated to pay any income taxes. Any income earned by Debtor is "passed through" to its shareholder, and the shareholder is responsible for paying any taxes. The tax return that has been filed shows nothing is due to the State of Hawaii from Debtor;

- Second, Debtor is willing to include a provision in the confirmation order requiring payment of any tax obligation of Debtor that may hereafter become due for tax year 2025.

As the tax return has been filed showing no tax is due, the Plan should be confirmed.

**Summary of Plan and Treatment of Claims**

As noted below, the Plan divides creditors into a few different classes but in essence, all creditors are to be paid the full amount of their Allowed Claim plus interest. As all classes are to be paid in full with interest, all classes are not impaired and are conclusively presumed to have accepted the Plan. See Section 1126(f).

The Plan provides that all payments are to be made from funds of Debtor, other than payment, if any, which is finally determined to be due to Leonite. For any amounts due to Leonite, the Plan provides for payment to be made by Debtor's insurer, which is also defending the adversary proceedings commenced by Leonite. (See Value Declaration ¶15). If for any reason, any required payment is not made by Debtor's insurer, the Plan provides that Debtor will make the payment.

**Confirmation Requirements Are Satisfied**

**A. The Plan Classification System Satisfies Sections 1122 and 1123(a)(1)-(4)**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class only if such claim or interest is "substantially similar" to the other claims or interests in such class. The Plan contains six classes of creditors and one class of interest holders.

The Classes are Administrative, Tax/Priority, Secured Class 3A- BOH and 3B-SBA, Leonite Unsecured Class, General Unsecured Class, and Equity. The BOH and SBA Secured classes are now moot as they have been paid in full from the proceeds of the KAL Note. Leonite is in a separate class as its claim is being defended against by Debtor's insurer, and if anything is found to be due, it will be paid by Debtor's insurer.

The Plan satisfies the requirements of sections 1123(a)(1)-(4) because it designates classes, specifies that all classes are not impaired, and specifies the treatment of each class, namely payment of the full amount of their Allowed Claim plus interest, and provides the required treatment of claims and interests. See Plan at Article 3 and 4.

**B. The Plan Provides Adequate Means for Implementation.**

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for its implementation. The Plan will be funded from Debtor's cash on hand, and, if additional funds are necessary for any reason, from the sale or mortgaging of real estate that it owns or from payments from Bender Consulting.

**C. Section 1123(a)(6) Does Not Apply**

Section 1123(a)(6) requires that a plan include in the corporate charter of the debtor, if applicable, "a provision prohibiting the issuance of nonvoting equity securities" and the distribution of voting power among classes. Debtor has no authorized shares in its charter that allows for the issuance of nonvoting equity securities.



U.S. Bankruptcy Court - Hawaii #26-00311 Dkt # 151 Filed 09/15/26 Page 21 of 30

**D. The Terms of the Plan are Consistent with Interests of Creditors & Equity**

The Plan complies with Section 1123(a)(7) in that it provides for the retention of officers and directors who have operated Debtor successfully, and their continuation is consistent with the interests of creditors and equity security holders and with public policy.

**E. Section 1123(a)(8) Does Not Apply.**

Section 1123(a)(8) only applies to individual debtors.

**F. Proponent Has Complied with Applicable Provisions of Bankruptcy Code**

Section 1129(a)(2) of the Code requires that a plan proponent comply with the applicable provisions of the Bankruptcy Code. *See e.g., Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988) (chapter 11 plan complies with applicable provisions of title and could be confirmed notwithstanding technical violations of Bankruptcy Code).

As evidenced by the record in this case, Debtor has complied with all of the Court's orders, and the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules, governing notice, disclosure, solicitation, and all other matters arising in or in connection with this case. Adequate, sufficient, and timely notice of the confirmation hearing and all other hearings was given to creditors and other parties in interest or parties to whom notice was required.

Debtor has filed its Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and has satisfied Section 1129(a)(2) of the Bankruptcy Code.

### G. The Plan Was Proposed in Good Faith.

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." Under Ninth Circuit law, a plan is proposed in good faith when it is intended to achieve a result consistent with the objectives of chapter 11 and in light of the Code's purpose to provide the debtor with a fresh start. In making that determination, a court looks at the totality of the circumstances. See *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002):

> A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code. *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 835 (9th Cir. 1989); see also, *Madison Hotel*, 749 F.2d at 425 ("For purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."). The requisite good faith determination is based on the totality of the circumstances. *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 172 (9th Cir. BAP 1988).

See also *In re Boulders on the River, Inc.*, 164 B.R. 99, 103 (B.A.P. 9th Cir. 1994).

Debtor proposed the Plan in good faith, with the legitimate and honest purposes of paying its creditors what they are due. The Plan has not been proposed for any purpose prohibited by law. That every creditor is receiving 100% of their Allowed Claim plus interest is clearly consistent with the objectives and purposes of the Bankruptcy Code. Accordingly, the Plan is proposed in good faith and the provisions of Section 1129(a)(3) have been satisfied.

### H. The Plan Complies With Section 1129(a)(4).

Section 1129(a)(4) of the Bankruptcy Code requires that "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property

under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." Article 3 of the Plan (Administrative Class - Class 1) provides: "Payments to the Subchapter V Trustee and Debtor's professionals are subject to Bankruptcy Court approval." Therefore, the Plan meets the requirement of Section 1129(a)(4).

**I. Disclosures Required Under Section 1129(a)(5).**

Section 1129(a)(5) of the Bankruptcy Code mandates that the plan proponent disclose the identity and affiliations of any known individual proposed to serve, after confirmation of the plan, as an officer or director of the debtor, and further requires the disclosure of the identity of any insider to be employed or retained by the debtor and the nature of compensation to be paid to such insider.

As noted above, the Plan mistakenly omitted such information. The officers and directors and their compensation after Confirmation of the Plan are exactly the same as they have been throughout this case and the creditors are aware of these parties.

Debtor can file an amended plan including such information, or there can be a provision in the Confirmation Order as to such matters. If the Court believes an amended plan is necessary, the amended plan need not be resolicited. Section 1127(a) authorizes a plan proponent to modify or amend it at any time before confirmation provided that the contents of the plan and classifications therein satisfy Sections 1122 and 1123 of the Bankruptcy Code. Under Fed. R. Bankr. P. 3019(a), if the amendment does not adversely change the treatment of any creditor or equity holder, the court may deem prior acceptances valid and waive resolicitation. Because the

amended plan would not change the treatment of any class of creditors, if the Court believes an amended plan should be filed, the Court should find that resolicitation of the Plan is not required.

**J. No Governmental Rate Approval is Necessary.**

Section 1129(a)(6) of the Bankruptcy Code requires that rates charged by the reorganized debtor be submitted for approval to any governmental regulatory commission having jurisdiction over such rates. Because Debtor does not operate in an industry where rates are regulated, this subsection is inapplicable.

**K. The Plan Satisfies Section 1129(a)(7) and (8)**

Section 1129(a)(7) generally referred to as the "best interests test" requires, with respect to each impaired class, that the holder of each claim or interest has either accepted the plan or will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

As noted above, there are no impaired claims, as all claims are being paid the full amount of their Allowed Claims plus interest.

Section 1129(a)(8) requires that each class has accepted the Plan or is not impaired under the Plan. Pursuant to Section 1126(f) a claim or class of claims that are not impaired are conclusively presumed to have accepted the Plan. It states:

> (f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect

to such class from the holders of claims or interests of such class is not required.

See *Ad Hoc Comm. of Holders of Trade Claims v. PG&E (In re PG&E Corp.)*, 46 F.4th 1047, 1055 (9th Cir. 2022)

Accordingly Section 1129(a)(7) and (8) are satisfied.

**L. Priority Claims are Treated Appropriately.**

Section 1129(a)(9) requires that priority and administrative claims be treated in accordance with that section's provision unless the holder of a priority claim consents to a less favorable treatment. Article 4 of the Plan provides for treatment of priority and administrative claims in accordance with section 1129(a)(9). There are currently interim applications for approximately $100,000 of professional fees scheduled for hearing. No priority claims have been filed.

**M. The Plan is Feasible.**

Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor unless such liquidation is provided for in the plan. The feasibility requirement is satisfied by a showing of a "reasonable probability of success." *In re Acequia, Inc.*, at 1364. "Success need not be guaranteed . . . . the mere potential for failure of the plan or the prospect of financial uncertainty is insufficient to disprove feasibility." See also, *In re Sagewood Manor Associates Limited Partnership*, 223 B.R. 756, 759 (Bankr. D. Nev. 1998) in which the Court stated: "Success need not be guaranteed. The mere potential for failure of the



U.S. Bankruptcy Court - Hawaii #26-00311 Dkt # 151 Filed 09/15/26 Page 26 of 30

plan or the prospect of financial uncertainty is insufficient to disprove feasibility. While a reviewing court must examine "the totality of the circumstances" in order to determine whether the plan fulfills the requirements of § 1129(a)(11), only a relatively low threshold of proof is necessary to satisfy the feasibility requirement. The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan of reorganization can be performed."

In this case, Debtor has sufficient cash on hand to pay all claims. Debtor is holding over $1,100,000 in its accounts. The total of the liquidated claims asserted (including disputed claims) is less than $900,000.

Debtor does not believe the final total of Allowed Claims in this case will come anywhere close to that $900,000 total as by the Confirmation Hearing, objections to approximately $700,000 of the filed claims of the Receiver and LRVW will have been filed and Debtor believes those claims will be disallowed or at the least substantially reduced. With respect to Leonite's claim, Debtor's insurer is defending the Adversary Proceedings and Debtor has $6,000,000 of coverage under its liability policy and umbrella policy. (Value Declaration ¶15).

In addition to the cash on hand, which exceeds the amount of the liquidated filed claims, Debtor owns the Property which was appraised for approximately $2,000,000 (with the Lease in effect), and the Solar Lot which was appraised for approximately $1,000,000. Those parcels of real estate are free of mortgages and can be sold or mortgaged if Debtor were to need additional funds. Additionally, Bender Consulting has stated that it will provide up to $1,000,000 of funds to Debtor if necessary to make any payments under the Plan.

Where a debtor's assets substantially exceed its liabilities, a plan is feasible. See

*Steelcase Inc. v. Johnston (In re Johnston)* at 326.

The Ninth Circuit has held that a bankruptcy court must consider the possible effect of pending litigation on feasibility. *Sherman v. Harbin (In re Harbin)*, 486 F.3d 510, 518 (9th Cir. 2007); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985). Here, unlike the circumstances in *Harbin* and *Pizza of Hawaii*, the Plan expressly provides sources of payment for potential Leonite liability: the Debtor's insurance coverage, backed by the Debtor's substantial cash and unencumbered real estate and, if necessary, the additional funding commitment from Bender Consulting. Thus, the potential liability is not ignored; it is specifically addressed in the Plan and in the evidence supporting confirmation.

Based on its cash on hand, the ability to sell or mortgage its properties, and the ability to obtain money from Bender Consulting, the Plan is feasible, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization.

**N. Payment of Fees**

Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable pursuant to Section 1930 of title 28, (fees due to the court and fees for the U.S. Trustee) as determined by the Court at the confirmation hearing, have been paid or that the plan provide for the payment of all such fees on the effective date of the plan. Any fees due to the Court would be an Administrative Expense which under Article 3 of the Plan are to be paid in full on the Effective Date. As this case is a case under Subchapter V, quarterly U.S. Trustee fees under 28 U.S.C. § 1930 are not applicable.



U.S. Bankruptcy Court - Hawaii #26-00311 Dkt # 151 Filed 09/15/26 Page 28 of 30

**O. Section 1129(a)(13), (14), (15), and (16) are Inapplicable**

Section 1129(a)(13) requires a plan provide for the continuation of retiree benefit payments under a plan. There are no retiree benefits within the meaning of Section 1114 of the Bankruptcy Code for which Debtor is obligated.

Section 1129(a)(14) and (15) are only applicable to individuals and are therefore inapplicable to this case.

Section 1129(a)(16) requires that any transfers of property under a plan comply with applicable nonbankruptcy law. As the Plan does not provide for any transfers of property, this section is not applicable.

**P. The Plan should be confirmed under Section 1191(a)**

Section 1191(a) provides that the Court shall confirm a plan under Subchapter V if all of the requirements of Section 1129(a), other than paragraph (15) of that section, are met. As the Plan meets all of the requirements of Section 1129(a), the Plan should be confirmed under Section 1191(a).

That two creditors in Class 5 cast ballots to reject the Plan does not prevent confirmation of a plan under Section 1191(a). As all creditors in Class 5 are being paid 100% of their Allowed Claim plus interest, those creditors and the class are legally unimpaired. Under Section 1126(f), a class that is not impaired under a plan, and each holder of a claim of such class, are conclusively presumed to have accepted the plan. Accordingly, the rejection ballots are of no legal effect.



U.S. Bankruptcy Court - Hawaii #26-00311 Dkt # 151 Filed 09/15/26 Page 29 of 30

## Conclusion

WHEREFORE, Debtor respectfully requests that the Court enter an order denying all objections; confirming the Plan under Section 1191(a); and granting such further relief as the Court may deem just and proper.

Dated: September 15, 2026

Lewis W. Siegel
Attorney for Hawaii Brewery Development Co., Inc.

/s/ Lewis W. Siegel
______________________________

808 BK LLLC
Attorney for Hawaii Brewery Development Co., Inc.

/s/ Lars Peterson
______________________________